Michael D. Braun (SBN 167416)
**KUZYK LAW, LLP**
2121 Avenue of the Stars, Ste. 800
Los Angeles, California 90067
Telephone: (213) 401-4100
Facsimile: (213) 401-0311
Email: mdb@kuzykclassactions.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **DEIJA BANKS on behalf of herself and all others similarly situated,**<br><br>**Plaintiff,**<br>**v.**<br><br>**TARGET CORPORATION**<br><br>**Defendant** | **CASE NO.: 26-cv-983**<br><br>**<u>CLASS ACTION</u>**<br><br>**COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF** |

Plaintiff Deija Banks, ("Plaintiff"), on behalf of herself and all others similarly situated, bring this class action against Target Corporation ("Target" or "Defendant"), and on the basis of personal knowledge, information and belief, and the investigation of counsel, allege as follows:

## INTRODUCTION

1. This is a proposed class action on behalf of a California and nationwide class (collectively, "Class") of consumers seeking redress for Defendant's deceptive practices associated with the advertising, labeling, and sale of its Up & Up Apple Cider Vinegar Gummies ("Product").

2. Apple Cider Vinegar ("ACV") is a type of vinegar made from fermented apples. Its principal active component is acetic acid which is responsible for its numerous health benefits such as the promotion of weight loss, lowering of blood sugar and cholesterol levels, improvement of gut and heart health and reduction of inflammation, among others.

3. The health benefits associated with ACV have made it a popular choice among consumers. In 2024, U.S. ACV sales exceeded $300 million with continued growth expected over the next ten years.

4. "The marketing industry is based on the premise that labels matter—that consumers will choose one product over another similar product based on its label and various tangible and intangible qualities they may come to associate with a particular source…. [C]onsumers rely on the accuracy of those representations in making their buying decisions."[1]

5. While this proposition holds true with respect to all consumer goods, it is even more pertinent when it comes to consumer goods that are directly related to a consumer's health and wellness, as is the case with dietary supplements such as ACV. Its importance is even more consequential when, as is the case here, consumers possess neither the scientific knowledge, nor the independent ability to verify the contents of a dietary supplement prior to its purchase, but instead must rely entirely on the honesty and integrity of the manufacturers and sellers of the product.

---

[1] *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 328 (2011).

6. Target markets, advertises, and sells a line of Apple Cider Vinegar Gummies which it promotes as advancing "general wellness." The Product's principal display panel claims that it is Apple Cider Vinegar. The Supplement Fact section states that each serving contains 500 mg of Apple Cider Vinegar (5% Acetic Acid).







7. By law, any product claiming to be Apple Cider Vinegar must contain a minimum of 4% acetic acid. Anything less, the product is not and cannot be called Apple Cider Vinegar as its contents are inefficacious and worthless. Additionally, Target goes beyond this promising its Product contains a minimum of "5% Acetic Acid" per serving.

8. Plaintiff conducted analytical testing on 12 representative samples of Target's Apple Cider Vinegar Gummies. The testing revealed that the Products contained on average less than 2.5%

acetic acid which: (a) renders its contents inert and worthless for its intended purpose; (b) renders the Product's statement of identity and its claim of being "Apple Cider Vinegar," false, misleading, deceptive and unlawful; and (c) renders the promise of containing 5% acetic patently false.

9. Throughout the applicable Class Period, Defendant has falsely represented the true nature of its Products. As a result of this false and misleading labeling, Defendant was able to sell its Products to thousands of unsuspecting consumers throughout California and nationwide.

10. Plaintiff alleges that Defendant's conduct is in breach of express warranty, violates California's Business and Professions Code § 17200, et. seq., California's Business & Professions Code § 17500, et. seq., and California Civil Code § 1750, et seq.

## JURISDICTION AND VENUE

11. Jurisdiction of this Court is proper under 28 U.S.C. § 1332(d)(2). Diversity jurisdiction exists as Plaintiff Banks is a California resident. Defendant Target is Minnesota corporation with its principal place of business in Minneapolis Minnesota. The amount in controversy exceeds $5,000,000 for the Plaintiff and members of the Class collectively, exclusive of interest and costs, by virtue of the combined purchase prices paid by Plaintiff and members of the putative Class, and the profits reaped by Defendant from its transactions with Plaintiff and the Class, as a direct and proximate result of the wrongful conduct alleged herein, and by virtue of the injunctive and equitable relief sought.

12. Venue is proper within this judicial district pursuant to 28 U.S.C. § 1391 because a substantial portion of the underlying transactions and events complained of occurred and affected persons and entities located in this judicial district. Defendant has received substantial compensation for affected transactions and business activity in this judicial district.

## PARTIES

13. Plaintiff Deija Banks is a resident of Hayward, California.

14. Ms. Banks purchased Defendant's Apple Cider Vinegar Products on approximately six occasions between 2023 and 2025 from Target stores located in San Leandro, San Ramon and

Dublin California. Ms. Banks principally purchased Defendant's Product for the health and wellness benefits associated with apple cider vinegar, including, but not limited to weight loss/control.

15. Ms. Banks made each of her purchases after reading and relying on Defendant's Product label, including the principal representations that the Product was Apple Cider Vinegar.

16. Ms. Banks believed that Defendant lawfully marketed and sold the Product.

17. Ms. Banks relied on Defendant's labelling and was misled thereby.

18. Ms. Banks would not have purchased the Product, or would have purchased the Product on different terms, had she known the truth.

19. Ms. Banks was injured in fact and lost money as a result of Defendant's improper conduct.

20. Plaintiff and members of the Class have been economically damaged by their purchases of the Products because the advertising for the Products was deceptive and/or misleading under California laws. The Products are misbranded and adulterated and therefore worth nothing, or at a minimum less than what Plaintiff and members of the Class paid for them. Plaintiff and members of the Class did not receive what they reasonably intended to receive and are entitled to a full refund.

21. Defendant Target is incorporated and headquartered in Minneapolis Minnesota. Target is one of America's largest retail corporations operating chains of big box department stores across the United States. Target sells its branded dietary supplements under the Up & Up brand name.

## <u>GENERAL ALLEGATIONS</u>

### A. Apple Cider Vinegar

22. Apple cider vinegar is a type of vinegar made through the fermentation of apple juice. The juice is exposed to yeast to ferment the sugars into alcohol. Bacteria converts the alcohol into

acetic acid which is the primary active compound in apple cider vinegar and is responsible for its health benefits.[2]

23. Formation of ACV begins with high quality apples that are crushed and pressed to extract the juice which is then fermented in a two-stage process. The first is alcoholic fermentation wherein the natural sugars in the apple juice are converted into alcohol by yeast. The second is acetic acid fermentation wherein specific bacteria known as acetobacters convert the alcohol into acetic acid.[3] The process can take several months to complete. The acetic acid resulting from the second fermentation is what gives apple cider vinegar its health benefits and preservative qualities.[4]

24. Research suggests that apple cider vinegar supports metabolic health in multiple ways.[5] Acetic acid is the bioactive ingredient responsible for these health benefits which include the lowering of blood pressure, the lowering of blood sugar and blood lipid levels, improved insulin sensitivity and delay of gastric emptying, collectively which yield numerous health benefits including weight loss and assistance with the management of type-2 diabetes.[6]

25. As a result of these health benefits, apple cider vinegar has become a popular choice among consumers. "Apple cider vinegar products are continuing to grow in popularity as consumers

---

[2] *6 Health Benefits of Apple Cider Vinegar, Backed by Science*, Healthline. Available at https://www.healthline.com/nutrition/6-proven-health-benefits-of-apple-cider-vinegar#supports-weight-loss. Last visited July 7, 2025.

[3] ETCHEM Natural Ingredients, How is Apple Cider Vinegar Powder Made? Available at https://et-chem.com/how-is-apple-cider-vinegar-powder-made-2/#apple-cider-vinegar-powder-production-process-and-benefits-RfqJwilLZW. Last visited January 28, 2026.

[4] Botanical, How is Apple Cider Vinegar Made? (October 16, 2023). Available at https://www.botanicalcube.com/news/how-is-apple-cider-vinegar-powder-made-71693126.html. Last visited January 28, 2026.

[5] Eckelkamp, S., *Foods we love: Apple Cider Vinegar, Levels* (September 11, 2023). Available at https://www.levels.com/blog/foods-we-love-apple-cider-vinegar. Last visited January 28, 2026.

[6] Guiné, R., et al, *Apple Fermented Products: An Overview of Technology, Properties and Health Effects*, Processes, MDPI (2021). Available at https://www.mdpi.com/2227-9717/9/2/223. Last visited July 3, 2025; Altay, I, et al, *Effect of spray drying conditions on physicochemical and functional properties of apple cider vinegar powder*, JSFA Reports (2023). Available at https://doi.org/10.1002/jsf2.130. Last visited January 28, 2026.

look for a panacea that can address an array of health concerns. For blood pressure and cholesterol support to weight management and more, consumers are finding apple cider vinegar a useful supplement."[7] The global apple cider vinegar market size was estimated at $644.44 million in 2024 and projected to grow over 1 billion by 2032.[8]

## B. Apple Cider Vinegar Powder

26. Despite the health benefits of apple cider vinegar, its sour taste and acidity limit its consumption in fresh form. As result, industry developed a method to convert apple cider vinegar from its liquid form to a powder form. In this way, the strong taste of ACV can be diminished, while the desired bioactive compounds are retained making the final product more desirable for consumer use.[9]

27. "The primary ingredient in apple cider vinegar powder is, unsurprisingly, apple cider vinegar. This liquid form serves as the foundation for the powder production process."[10] The powder

---

[7] *Why is apple cider vinegar so popular?,* Nutritional Outlook, August 18 2023. Available at https://www.nutritionaloutlook.com/view/why-is-apple-cider-vinegar-so-popular. Last visited January 28, 2026.

[8] *Apple Cider Vinegar Market Size, Share & Industry Analysis, By Source (Organic and Conventional), By Form (Liquid and Tablet), By Distribution Channel (Hypermarkets/Supermarkets, Online Channels, Traditional Grocery Stores, and Others), and Regional Forecast, 2024-2032*, Fortune Business Insights, November 04, 2024. Available at https://www.fortunebusinessinsights.com/apple-cider-vinegar-market-105136. Last visited January 28, 2026

[9] Altay, I, et al., *Effect of spray drying conditions on physicochemical and functional properties of apple cider vinegar powder*, JSFA Reports (2023), https://doi.org/10.1002/jsf2.130. Last visited January 28, 2026.

[10] Wellgreen, *How is Apple Cider Vinegar Powder Made?* (March 12, 2025). Available at https://www.wellgreenherb.com/knowledge/how-is-apple-cider-vinegar-powder-made. Last visited January 28, 2026.

is designed to contain the same amounts of acetic acid, nutrients, and components as liquid vinegar thereby ensuring consumers receive the same health benefits as the liquid form. [11]

28. The conversion process is relatively straight forward. After fermentation, the liquid vinegar is concentrated to increase its acetic acid content. This is typically done through evaporation, where water is removed under controlled temperatures. The concentrated vinegar is then turned into a fine powder through a drying process which concentrates all the compounds, including acetic acid, into a dry powdered form. [12]

29. The two main methods of drying are spray drying and freeze-drying. In spray drying, the liquid mixture is atomized into fine droplets and sprayed into a hot air chamber. The droplets quickly dry into a fine powder. Freeze-drying, on the other hand, involves freezing the mixture and then sublimating the ice under vacuum conditions, leaving behind a dry, porous powder. Critically, both methods are designed to preserve the beneficial compounds of the apple cider vinegar (*i.e.*, acetic acid) while removing moisture.[13]

30. Ultimately ACV powder is manufactured to contain the same level of bioactive ingredients as the liquid from which it was derived.[14]

---

[11] Botanical, *How Is Apple Cider Vinegar Powder Made?* (October 16, 2023). Available at https://www.botanicalcube.com/news/how-is-apple-cider-vinegar-powder-made-71693126.html. Last visited January 28, 2026.

[12] *Id.*

[13] Wellgreen, *How is Apple Cider Vinegar Powder Made?* (March 12, 2025). Available at https://www.wellgreenherb.com/knowledge/how-is-apple-cider-vinegar-powder-made. Last visited January 28, 2026.

[14] *Id.*; Botanical, *How Is Apple Cider Vinegar Powder Made?* (October 16, 2023). Available at https://www.botanicalcube.com/news/how-is-apple-cider-vinegar-powder-made-71693126.html. Last visited July 7, 2025; Altay, I, et al, *Effect of spray drying conditions on physicochemical and functional properties of apple cider vinegar powder*, JSFA Reports (2023). Available at https://doi.org/10.1002/jsf2.130 (last visited January 28, 2026).

## C. Apple Cider Vinegar Requires a Minimum of 4% Acetic Acid

31. The Federal Food, Drug & Cosmetic Act ("FDCA") broadly regulates the sale of dietary supplements to the consuming public. 21 U.S.C §301.[15] It was promulgated in significant part to prevent consumer deception and was principally implemented through the creation of a uniform system of labeling on which consumers could rely to make informed purchasing decisions.

32. Among its mandates, the principal display panel of a dietary supplement shall bear as one of its principal features a statement of the identity of the commodity. 21 C.F.R. §101.3 As a general matter, the statement of identity of a dietary supplement is the name specified by federal law or regulation, or, if no such name is specified, its common or usual name.[16]

33. The U.S. Food and Drug Administration ("FDA") has issued a Compliance Policy Guide ("CPG") on the labeling of vinegars. CPG §525.825 Vinegar, Definitions - Adulteration with Vinegar Eels. The FDA policy set forth in the CPG is unequivocal.[17]

> FDA considers the following to be satisfactory guidelines for the labeling of vinegars:
>
> Natural vinegars as they come from the generators normally contain in excess of 4 grams of acetic acid per 100 mL. When vinegar is diluted with water, the label must bear a statement such as "diluted with water to __ percent acid strength", with the

---

[15] In 1994 the FDCA was amended by the Dietary Supplement Health and Education Act of 1994 to bring dietary supplement under the broader purview of the FDCA. Among other things, it established a series of Good Manufacturing Practices ("GMP") to be employed by manufacturers of dietary supplements to ensure the products meet their label claims.

[16] U.S. Food & Drug Administration Dietary Supplement Labeling Guide: Chapter II. Identity Statement (2016)(" Dietary Supplement Labeling Guide"). Available at https://www.fda.gov/food/dietary-supplements-guidance-documents-regulatory-information/dietary-supplement-labeling-guide-chapter-ii-identity-statement. Last visited January 28, 2026.

[17] Compliance Policy Guides are published by the U.S. Food and Drug Administration to outline the agency's enforcement policies regarding specific regulatory issues. These guides help FDA staff determine when and how to take enforcement action (such as issuing warning letters, seizing products, or pursuing injunctions) and also inform regulated industries about how the FDA interprets certain statutes or regulations. FDA Staff Manual Guides, Volume IV – Agency Program Directives Compliance Management Of The FDA Compliance Policy Guides Manual, 2016. Available at https://www.fda.gov/about-fda/staff-manual-guides/agency-program-directives-volume-iv-4000-9100. Last visited January 28, 2026.

> blank filled with the actual percent of acetic acid - **<u>in no case should it be less than 4 percent</u>**. Each of the varieties of vinegar listed below should contain 4 grams of acetic acid per 100 mL.(20oC) (emphasis added).
>
> VINEGAR, CIDER VINEGAR, APPLE VINEGAR. The product made by the alcoholic and subsequent acetous fermentations of the juice of apples.[18]

34. Any product claiming to be apple cider vinegar but which contains less than 4% acetic acid is not apple cider vinegar. Labeling it as such is false, misleading, deceptive and in violation of the law. Moreover, failure to provide the minimum of 4% acetic acid eliminates any of the potential health benefits that could be derived from consuming apple cider vinegar, thereby rendering this Product a worthless placebo.

35. The FDCA requires every supplement to accurately list its "dietary ingredients [] includ[ing] the quantity of each such ingredient per serving[.]" 21 U.S.C. § 343(q)(5)(F)(ii). "A food with a label declaration of a vitamin . . . shall be deemed to be misbranded under section 403(a) of the FDCA unless it meets the following requirement . . . [w]hen a vitamin . . . meets the definition of a Class I nutrient, the nutrient content of the composite must be formulated to be at least equal to the value for that nutrient declared on the label." *Id*. §101.9(g)(4)(i).

36. A dietary supplement is also considered adulterated when "…it has been prepared, packed, or held under conditions that do not meet current good manufacturing practice regulations [("cGMP")]." 21 U.S. Code § 342 (g)(1). Here, among other things, cGMP requires that: that a dietary supplement consistently meet the established specifications for its identity, purity, strength, and composition, 21 C.F.R. §111.3, and that each batch is tested to verify specifications for identity, purity, strength, composition. 21 C.F.R. §111.75(c).

37. Although its axiomatic – that a dietary supplement label must accurately reflect the identity of its ingredients and their respective amounts -- the FDA's Dietary Supplement Labeling Guide makes this abundantly clear.

---

[18] https://www.fda.gov/media/71937/download. Last visited July 6, 2025.

> Must dietary ingredients that I have added to my products be present at 100% of the amount that I declare?
>
> For dietary ingredients that are specifically added, **your product must contain 100% of the volume or weight that you have declared on the label**, with the exception of a deviation that is attributable to the analytical method. **Products that contain less than this amount of such a dietary ingredient would be misbranded and in violation of the law**.

21 CFR §101.9(g)(3) and (g)(4)(emphasis added).[19]

38. At bottom, the FDA has issued a Compliance Policy Guide that mandates anything sold as apple cider vinegar must contain no less than 4% acetic acid or be considered adulterated. That ACV has been converted to a powder, tablet, gummy or any other form does not alter its underlying bioactive ingredients that make it what it is. Moreover, FDA is not obligated to foresee what forms of apple cider vinegar manufacturers chose to sell but rather only that it comports with a standard of identity (*i.e.,* contains a minimum of 4% acetic acid) and does not otherwise deceive the consuming public.[20]

39. Additionally, Target specifically promises that its Apple Cider Vinegar consists of "5% Aceti Acid" which, as demonstrated by Plaintiff's analytical testing, it does not.

40. The 4% minimum acetic acid standard is also recognized by several states, including California. *See e.g.,* Cal. Code Regs. Tit. 3, § 911.1 - Mexican Style Chorizo referencing use apple cider vinegar as an optional ingredient. (c)(4) (4) Cider vinegar, wine vinegar, or apple cider vinegar. The vinegar used shall have a concentration of no less than four grams of acetic acid per 100 cubic centimeters (20 °C); 2024 New York Laws AGM - Agriculture and Markets Article 17 - Adulteration, Packing, and Branding of Food and Food Products 207 - Definition of Vinegars and Adulterated Vinegars. (1) The terms "cider vinegar," "apple cider vinegar," or words of similar

---

[19] FDA, Dietary Supplement Labeling Guide Chapter IV. Nutrition Labeling, Available at https://www.fda.gov/food/dietary-supplements-guidance-documents-regulatory-information/dietary-supplement-labeling-guide-chapter-iv-nutrition-labeling. Last visited January 30, 2026

[20] While these fundamental violations of the FDCA serve to highlight the deceptive and misleading nature of Defendant's labeling, significantly, Plaintiff do not seek to prosecute or enforce any aspect of the FDCA. Plaintiff's allegations that Defendant failed to properly label its Products independently give rise to their stated causes of action detailed below.

import, shall be construed to mean the product made exclusively from the expressed juice of clean, sound, fresh apples, or parts of such apples, by alcoholic and subsequent acetous fermentations without distillation; (7) All vinegars which contain less than four grams of acetic acid in one hundred cubic centimeters of the vinegar at twenty degrees centigrade, shall be deemed adulterated; Michigan Food Law, Act 92 of 2000, 289.8111(3) The term "cider vinegar" or "apple cider vinegar" as used in this section means vinegar derived by the alcoholic and subsequent acetous fermentation of the expressed juice of apples, the acidity, solids, and ash of which have been derived exclusively from apples and which contains not less than 4% of absolute acetic acid. Cider vinegar which, during the course of manufacture, has developed in excess of 4% acetic acid may be reduced to a strength of not less than 4%, and cider vinegar so reduced is not regarded as adulterated.[21]

41. The apple cider vinegar industry has gone beyond FDA requirements, embracing a minimum 5% acetic acid standard that is consistent with the amounts used in clinical studies supporting the health benefits of ACV (*e.g.,* weight loss/control). [22]

42. A sample of Defendant's marketplace competitors confirms the same.

---

[21] Guiné, R., et. al., *Apple Fermented Products: An Overview of Technology, Properties and Health Effects*, Processes, MDPI (2021) ("The composition is regulated, considering mainly acidity for which the minimum legal limit is 4% (w/v) acetic acid). Available at https://www.mdpi.com/2227-9717/9/2/223. Last visited January 28, 2026.

[22] See e.g., Bragg, Apple Cider Vinegar - How it is Made and What Makes it so Good? Available at https://www.bragg.com/blogs/science/apple-cider-vinegar-how-it-is-made-and-what-makes-it-so-good?srsltid=AfmBOoqTC5QJp0qBPY_mKsibGMjD1R2XDydB6nVc9eFcbga71zWGPOCe. Last visited January 28, 2026; Hartung, S, *Does Apple Cider Vinegar Really Help You Lose Weight? Here's What Studies Say,* MMSC-BMI, Harvard Medical School (June 30, 2025)(meta-analysis of the effects of apple cider vinegar on weight loss finding that "typical study protocols give participants 1–2 tablespoons of 5 % acetic acid diluted in water before the largest meal). Available at https://www.eurekahealth.com/resources/apple-cider-vinegar-weight-loss-studies-evidence-real-en? Last visited January 28, 2026.



[23]






[24]




---

[23] https://www.amazon.com/dp/B07XZPCTR7/ref=sspa_dk_detail_2?psc=1&pd_rd_i=B07XZPCTR7&pd_rd_w=BdJ2M&content-id=amzn1.sym.953c7d66-4120-4d22-a777-f19dbfa69309&pf_rd_p=953c7d66-4120-4d22-a777-f19dbfa69309&pf_rd_r=YBK29QYCT5A2XWYQNS0P&pd_rd_wg=CzB9v&pd_rd_r=045c29d1-94fe-45f2-b7b0-eee6ccb8866e&sp_csd=d2lkZ2V0TmFtZT1zcF9kZXRhaWwy. Last visited January 28, 2026.

[24] amazon.com/Goli-Sugar-Apple-Vinegar-Gummies/dp/B0F284XV4Z/ref=zg_bs_g_6939041011_d_sccl_17/141-9765367-3971544?psc=1. Last visited January 28, 2026.



[25]






[26]




[25] https://www.amazon.com/Apple-Cider-Vinegar-Gummies-Alternative/dp/B091M74V9H/ref=zg_bs_g_6939041011_d_sccl_47/141-9765367-3971544?th=1. Last visited January 28, 2026.

[26] https://www.amazon.com/Pure-Apple-Cider-Vinegar-Gummies/dp/B07Q58RTJB/ref=zg_bs_g_6939041011_d_sccl_12/141-9765367-3971544?th=1. Last visited January 28, 2026.



[27]



**Supplement Facts**
Serving Size: 1 Gummy
Servings Per Container: 60

| | Amount Per Serving | %DV |
|---|---|---|
| Calories | 10 | |
| Total Carbohydrate | 3 g | 1%† |
| Total Sugars | 2 g | ** |
| Includes 2g Added Sugars | | 4%† |
| Vitamin B-6 (as pyridoxine HCl) | 0.5 mg | 29% |
| Folate | 200 mcg DFE (120 mcg folic acid) | 50% |
| Vitamin B-12 (as cyanocobalamin) | 1.2 mcg | 50% |
| Iodine (as potassium iodide) | 50 mcg | 33% |
| **Apple Cider Vinegar Complex (fruit)** Consisting of: apple cider vinegar powder (providing 5% total acid) and unrefined liquid apple cider vinegar | 500 mg | ** |
| Pomegranate Juice Powder (fruit) | 40 mcg | ** |
| Beet Root Juice Powder | 40 mcg | ** |

†Percent Daily Value based on a 2,000 calorie diet.
**Daily Value (DV) not established.

**D. Plaintiff's Analytical Testing**

Plaintiff conducted analytical testing on 12 sample units of Defendant's ACV Gummies. The twelve units were purchased in 2025 from Target. The samples were taken from the following Lot Numbers: 2990605825, 2990605925, 2984300325, 3215418225, 3230823125, 3227121325, 3236523925, all of which currently remain unexpired and were available for sale and consumption during the same period of time in which Plaintiff made at least one of her purchases.

---

[27] https://www.amazon.com/Dr-Tobias-Vinegar-Supplement-Gummies/dp/B089T5MQM1/ref=sr_1_1?crid=1AXCUM1SN2IRE&dib=eyJ2IjoiMSJ9.IySBjt7ERvszenXN79JSB7w-v3U1YoKthZ6j39_vEvZKOiUMuoS9-R_VviVoyn4RQL8EMXJTdJP0UB8t-E8eBwymnK8WLUUovEUo8T7i01bPU5eEOZRaaI_Bp8kTdTrtuNjE-x9TDVbCdQkgyx2NZuLx2BbfJE3VsYuXl717BOnLEhybU_ewfzGggxhZbbfK2C48gsK7NPVnD5q4KN3B1tr54y85t-FoOhBLRFCGageT0GPGOkA0o3jtJCWJwMLf6sCxemmgiw4TM1vIaf3FHgreK_z6OH9vTH0MLok8Pw8.1LWW4-dgM8CuuHy-H63jI9tMEwrgZdIr8VOkXx1YprI&dib_tag=se&keywords=dr%2Btobias%2Bapple%2Bcider%2Bvinegar&qid=1769650689&rdc=1&s=hpc&sprefix=dr%2Btobias%2Bapple%2Bcider%2Bvinegar%2Chpc%2C190&sr=1-1&th=1. Last Visited January 28, 2026

43. Analytical tests on Defendant's Gummies were performed using High-Performance Liquid Chromatography (HPLC), a well-accepted analytical method for identifying and quantifying acetic acid content.

44. Defendant's Product claims to contain 500 mg of apple cider vinegar per serving with a minimum of 5% acetic acid. At 5%, the acetic acid content should be 25 mg (*i.e.*, 5% of 500 mg).

45. Test results demonstrate that the Products contain on average approximately 12 mg of acetic acid, less than half than the amount of acetic acid promised on the label and less than the 20 mg (4%) necessary to even be considered apple cider vinegar.[28]

46. As detailed above, a product claiming to be ACV containing less than 4% acetic acid is considered adulterated by FDA. Naming, marketing and selling it as such is false, misleading and in violation of the law.

47. Independently, Target promises that its Product contains a minimum of 5% acetic acid. Failure to provide a minimum of 5% acetic acid renders its label claim false and misleading.

48. By failing to properly label its Product, Defendant has misled and deceived consumers in violation of the laws pled herein.

49. As a result of Defendant's unlawful and deceptive conduct, Plaintiff and members of the Class have been harmed.

### E. No Adequate Remedy At Law

50. Plaintiff and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

51. Broader Statutes of Limitations. The statutes of limitations for the causes of action pled herein vary. The limitations period is four years for claims brought under the UCL, which is one year longer than the statutes of limitations for damages claims under the CLRA.

---

[28] Although not required to do so, Plaintiff conducted testing consistent with the FDA's protocol under 21 C.F.R. §101.9(g)(2).

52. Broader Scope of Conduct. The UCL creates a cause of action for violations of other laws (*e.g.,* Sherman Law)[29], which does not require, among other things, that a reasonable consumer would have been deceived in order to establish a violation. Thus, Plaintiff and Class members may be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein.

53. Injunctive Relief to Cease Misconduct and Dispel Misperception. Injunctive relief is appropriate on behalf of Plaintiff and members of the Class because Defendant continues to misrepresent the Products with the challenged representations. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm).

54. Further, injunctive relief, in the form of affirmative disclosures, are necessary to dispel the public misperception about the Product that has resulted from years of Defendant's unfair, fraudulent, and unlawful marketing efforts. Such disclosures would include, but are not limited to, publicly disseminated statements that the Product's challenged representations are not true and provide accurate information about the Product's true nature; and/or requiring prominent qualifications and/or disclaimers on the Product's front label concerning the Product's true nature.

55. An injunction requiring affirmative disclosures to dispel the public's misperception and prevent the ongoing deception and repeat purchases based thereon, is also not available through a legal remedy (such as monetary damages).

56. Procedural Posture—Incomplete Discovery & Pre-Certification. Lastly, this is an initial pleading in this action and discovery has not yet commenced. No class has been certified. No expert discovery has commenced. The completion of fact and expert discovery, as well as the certification of this case as a class action, are necessary to finalize and determine the adequacy and availability of all remedies, including legal and equitable, for Plaintiff's individual claims and any

[29] California has expressly adopted federal labeling requirements as its own pursuant to the Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code § 109875 et seq. (the "Sherman Law").

certified class. Plaintiff therefore reserves her right to amend this complaint and/or assert additional facts that demonstrate this Court's jurisdiction to order equitable remedies where no adequate legal remedies are available for either Plaintiff and/or any certified class. Such proof, to the extent necessary, will be presented prior to the trial of any equitable claims for relief and/or the entry of an order granting equitable relief.

**ECONOMIC INJURY**

57. Plaintiff sought to buy Products that were lawfully labeled, marketed, and sold.

58. Plaintiff saw and relied on Defendant's false and misleading labeling of its Products.

59. Target guaranteed, and Plaintiff believed, that the purchased Products contained apple cider vinegar and that it contained 5% acetic acid. It did not, thereby rendering the label promise false and the Products worthless.

60. Plaintiff believed that the Products were lawfully marketed and sold.

61. In reliance on the claims made by Defendant regarding the qualities of its Product (*i.e.*, that it was actual apple cider vinegar), Plaintiff paid for a worthless Product, or at a minimum, a price premium for a Product that does not contain its principal ingredient, nor provides any of the health benefits associated with it.

62. As a result of their reliance on Defendant's misrepresentations, Plaintiff received Products that did not contain their promised ingredient.

63. Plaintiff received Products that were unlawfully marketed and sold.

64. Plaintiff lost money and thereby suffered injury as she would not have purchased these Products and/or paid as much for them absent the misrepresentation.

65. Defendant knows that the statement of identity of a product is material to a consumer's purchasing decision.

66. Plaintiff altered her position to her detriment and suffered damages in an amount equal to the amounts she paid for the Product she purchased, and/or in additional amounts attributable to the deception.

67. By engaging in the false and deceptive conduct alleged herein, Defendant reaped and continues to reap financial benefits in the form of sales and profits from its Products.

68. Plaintiff, however, would be willing to purchase Defendant's Apple Cider Vinegar Products again in the future only if she is able to rely with confidence that Defendant's labeling is truthful and not deceptive.

69. Without an injunction, however, Plaintiff will not be able to purchase Defendant's Product in the future, even though Plaintiff may wish to, as simply viewing the ingredient list on Defendant's Product will not afford Plaintiff the opportunity to determine the actual contents of the Product.

70. Reasonable consumers such as Plaintiff possess neither the scientific knowledge, nor the independent ability to verify the contents of a dietary supplement prior to its purchase but instead must rely entirely on the honesty and integrity of the manufacturers and sellers of the product.

## CLASS ACTION ALLEGATIONS

71. Plaintiff brings this action on behalf of herself and on behalf of classes of all others similarly situated consumers defined as follows:

a. **California:** All persons in California who purchased the Class Products in California during the Class Period; [30]

b. **Nationwide:** All persons in the United States who purchased the Class Products in during the Class Period;

c. **Class Period** is the maximum time allowable as determined by the statute of limitation periods accompanying each cause of action.

72. Plaintiff brings this class action pursuant to Federal Rule of Civil Procedure 23(a), and 23(b)(1), 23(b)(2), 23(b)(3) and 23(c)(4).

73. Excluded from the Classes are: (i) Defendant and its employees, principals, affiliated entities, legal representatives, successors and assigns; and (ii) the judges to whom this action is assigned.

---

[30] Collectively referred to as "Class or Classes."

74. Upon information and belief, there are tens of thousands of members of the Class. Therefore, individual joinder of all members of the Class would be impracticable.

75. There is a well-defined community of interest in the questions of law and fact affecting the parties represented in this action.

76. Common questions of law or fact exist as to all members of the Class. These questions predominate over the questions affecting only individual Class members. These common legal or factual questions include but are not limited to:

a. Whether Defendant marketed, packaged, or sold the Class Products to Plaintiff and those similarly situated using false, misleading, or deceptive statements or representations;

b. Whether Defendant omitted or misrepresented material facts in connection with the sales of its Products;

c. Whether Defendant participated in and pursued the common course of conduct complained of herein;

d. Whether Defendant's actions violate the Unfair Competition Law, Cal. Bus. & Prof. Code §§17200, et seq. (the "UCL");

e. Whether Defendant's actions violate the False Advertising Law, Cal. Bus. & Prof. Code §§17500, et seq. (the "FAL");

f. Whether Defendant's actions violate the Consumers Legal Remedies Act, Cal. Civ. Code §§1750, et seq. (the "CLRA");

g. Whether Defendant's actions constitute breach of express warranty;

h. Whether Defendant should be enjoined from continuing the above-described practices;

i. Whether Plaintiff and members of the Class are entitled to declaratory relief; and

j. Whether Defendant should be required to make restitution, disgorge profits, reimburse losses, and pay damages as a result of the above-described practices.

77. Plaintiff's claims are typical of the claims of the Class, in that Plaintiff are consumers who purchased Defendant's Product. Plaintiff is no different in any relevant respect from any other Class member who purchased the Product, and the relief sought is common to the Class.

78. Plaintiff is an adequate representatives of the Class because her interests do not conflict with the interests of the members of the Class they seek to represent, and they have retained counsel competent and experienced in conducting complex class action litigation. Plaintiff and her counsel will adequately protect the interests of the Class.

79. A class action is superior to other available means for the fair and efficient adjudication of this dispute. The damages suffered by each individual Class member will likely be relatively small, especially given the cost of the Products at issue and the burden and expense of individual prosecution of complex litigation necessitated by Defendant's conduct. Thus, it would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them. Moreover, even if members of the Class could afford individual actions, it would still not be preferable to class-wide litigation. Individualized actions present the potential for inconsistent or contradictory judgments. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

80. In the alternative, the Class may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate preliminary and final equitable relief with respect to each Class.

81. The requirements for maintaining a class action pursuant to Rule 23(b)(2) are also met, as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Violation of Breach of Express Warranty
### Cal. Com. Code §2313

82. Plaintiff incorporates each and every allegation contained in the paragraphs above as if rewritten herein.

83. Defendant was afforded reasonable notice of this claim in advance of the filing of this complaint.

84. Defendant made express warranties to Plaintiff and members of the Class that the Product they purchased was Apple Cider Vinegar consisting of at least 5% acetic acid.

85. The express warranties made to Plaintiff and members of the Class appear on every Product label. This warranty regarding the nature of the Product and promised ingredients contained therein marketed by Defendant specifically relates to the goods being purchased and became the basis of the bargain.

86. Plaintiff and Class members purchased the Products in the belief that they conformed to the express warranties that were made on the Products' labels.

87. Defendant breached the express warranties made to Plaintiff and members of the Class by failing to supply goods that conformed to the warranties it made. As a result, Plaintiff and members of the Class suffered injury and deserve to be compensated for the damages they suffered.

88. Plaintiff and the members of the Class paid money for the Products. However, Plaintiff and the members of the Class did not obtain any value, or at a minimum did not obtain the full value of the advertised Products. If Plaintiff and other members of the Class had known of the true nature of the Products, they would not have purchased them or paid less for them. Accordingly, Plaintiff and members of the Class have suffered injury in fact and lost money or property as a result of Defendant's wrongful conduct.

89. Plaintiff and Class members are therefore entitled to recover damages, punitive damages, equitable relief such as restitution and disgorgement of profits, and declaratory and injunctive relief.

**<u>SECOND CAUSE OF ACTION</u>**
**Unlawful Business Practices**
**Violation of The Unfair Competition Law ("UCL")**
**Bus. & Prof. Code §§17200, *et seq.***
**(On Behalf of the California Subclass)**

90. Plaintiff incorporates each and every allegation contained in the paragraphs above as if restated herein.

91. The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. Prof. Code §17200.

92. A business act or practice is "unlawful" if it violates any established state or federal law.

93. Defendant's acts, omissions, misrepresentations, practices, and/or non-disclosures concerning the Products alleged herein, constitute "unlawful" business acts and practices in that they violate the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§301, et seq. and its implementing regulations, including, at least, the following sections:

a. 21 U.S.C. §343(a), which deems food misbranded when its labeling contains a statement that is false or misleading in any particular;

b. 21 C.F.R. §102.5(a)-(d), which prohibits the naming of foods so as to create an erroneous impression about the presence or absence of ingredient(s) or component(s) therein;

c. 21 U.S.C. §§331and 333, which prohibits the introduction of misbranded foods into interstate commerce.

d. 21 U.S.C. §342(g)(1) which deems a dietary supplement adulterated if it has been prepared, packed, or held under conditions that do not meet current good manufacturing practice regulations.

94. California has expressly adopted federal labeling requirements as its own pursuant to the Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code § 109875 et seq. (the "Sherman Law"), the Sherman Law, which provides that "[a]ll food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food regulations of this state." Cal. Health & Safety Code § 110100.

95. Defendant's violations of federal law and regulations violates California's Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code § 109875 et seq. ("Sherman Law"), including, but not limited to, the following sections:

96. Section 110100 (adopting all FDA regulations as state regulations);

97. Section 110290 ("In determining whether the labeling or advertisement of a food . . . is misleading, all representations made or suggested by statement, word, design, device, sound, or any combination of these, shall be taken into account");

98. Section 110390 ("It is unlawful for any person to disseminate any false advertisement of any food. . . . An advertisement is false if it is false or misleading in any particular.");

99. Section 110395 ("It is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food . . . that is falsely advertised");

100. Section 110398 ("It is unlawful for any person to advertise any food, drug, device, or cosmetic that is adulterated or misbranded");

101. Section 110400 ("It is unlawful for any person to receive in commerce any food . . . that is falsely advertised or to deliver or proffer for delivery any such food . . . ."); and

102. Section 110660 ("Any food is misbranded if its labeling is false or misleading in any particular").

103. Each of the challenged omissions, statements, and actions by Defendant violates the FDCA, and the Sherman Law, and, consequently, violates the "unlawful" prong of the UCL.

104. Defendant's conduct is further "unlawful" because it violates California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 et seq. (the "FAL"), California's Consumers

Legal Remedies Act, Cal. Civ. Code § 1750 et seq. (the "CLRA"), and breaches express warranty, as discussed in the claims above and below.

105. By committing the unlawful acts and practices alleged above, Defendant has engaged, and continue to be engaged, in unlawful business practices within the meaning of California Business and Professions Code §§17200, *et seq.*

106. In accordance with California Business & Professions Code Section 17203, and as Plaintiff lacks an adequate remedy at law, they seek an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

107. Through its unlawful acts and practices, Defendant obtained, and continues to unfairly obtain, money from members of the Class. As such, Plaintiff requests that this Court cause Defendant to restore this money to Plaintiff and all members of the Class to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future. Otherwise, the Class may be irreparably harmed and denied an effective and complete remedy if such an order is not granted.

**<u>THIRD CAUSE OF ACTION</u>**
**Unfair Business Practices**
**Violation of The Unfair Competition Law**
**Bus. & Prof. Code §§ 17200, *et seq.***
**(On Behalf of the California Subclass)**

108. Plaintiff incorporates each and every allegation contained in the paragraphs above as if restated herein.

109. The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. Prof. Code §17200.

110. A business act or practice is "unfair" under the Unfair Competition Law if the reasons, justifications and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

111. Defendant violated, and continues to violate, the "unfair" prong of the UCL through its misleading description of the Products. The gravity of the harm to members of the Class resulting from such unfair acts and practices outweighs any conceivable reasons, justifications, or motives of Defendant for engaging in such deceptive acts and practices. By committing the acts and practices alleged above, Defendant engaged, and continued to engage, in unfair business practices within the meaning of California Business and Professions Code §17200, *et seq.*

112. In accordance with California Business & Professions Code Section 17203, and as Plaintiff lacks an adequate remedy at law, they seek an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

113. Through its unfair acts and practices, Defendant obtained, and continue to unfairly obtain, money from members of the Class. As such, Plaintiff has been injured and request that this Court cause Defendant to restore this money to Plaintiff and the members of the Class, to disgorge the profits Defendant made on its Products, and to enjoin Defendant from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future. Otherwise, the Class may be irreparably harmed and denied an effective and complete remedy if such an Order is not granted.

**FOURTH CAUSE OF ACTION**
**Fraudulent Business Practices**
**Violation of The Unfair Competition Law**
**Bus. & Prof. Code §§ 17200, *et seq*.**
**(On Behalf of the California Subclass)**

114. Plaintiff incorporates each and every allegation contained in the paragraphs above as if restated herein.

115. The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code §17200.

116. A business act or practice is "fraudulent" under the Unfair Competition Law if it actually deceives or is likely to deceive members of the consuming public.

117. Defendant's acts and practices of mislabeling its Products in a manner to suggest they contain ingredients in promised amounts which they do not contain.

118. As a result of the conduct described above, Defendant have been, and will continue to be, unjustly enriched at the expense of Plaintiff and members of the proposed Class. Specifically, Defendant has been unjustly enriched by the profits it has obtained from Plaintiff and the Class from the purchases of its Products.

119. In accordance with California Business & Professions Code Section 17203, and as Plaintiff lacks an adequate remedy at law, they seek an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

120. Through its fraudulent acts and practices, Defendant has improperly obtained, and continue to improperly obtain, money from members of the Class. As such, Plaintiff requests that this Court cause Defendant to restore this money to Plaintiff and the Class, to disgorge the profits Defendant have made, and to enjoin Defendant from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future. Otherwise, the Class may be irreparably harmed and denied an effective and complete remedy if such an Order is not granted.

## FIFTH CAUSE OF ACTION

**False Advertising**
**Violation of California Business & Professions Code §§ 17500, *et seq*.**
**(On Behalf of the California Subclass)**

121. Plaintiff incorporates each and every allegation contained in the paragraphs above as if restated herein.

122. Defendant uses advertising and packaging to sell its Products. Defendant disseminates advertising regarding its Products which by their very nature are deceptive, untrue, or misleading within the meaning of California Business & Professions Code §§17500, *et seq.* because those advertising statements contained on the labels are misleading and likely to deceive, and continue to deceive, members of the putative Class and the general public.

123. In making and disseminating the statements alleged herein, Defendant knew or should have known that the statements were untrue or misleading, and acted in violation of California Business & Professions Code §§17500, *et seq*.

124. The misrepresentations and non-disclosures by Defendant of the material facts detailed above constitute false and misleading advertising and therefore constitute a violation of California Business & Professions Code §§17500, *et seq*.

125. Through its deceptive acts and practices, Defendant has improperly and illegally obtained money from Plaintiff and the members of the Class. As such, Plaintiff requests that this Court cause Defendant to restore this money to Plaintiff and the members of the Class, and to enjoin Defendant from continuing to violate California Business & Professions Code §§17500, *et seq.*, as discussed above. Otherwise, Plaintiff and those similarly situated will continue to be harmed by Defendant false and/or misleading advertising.

126. Pursuant to California Business & Professions Code §17535, Plaintiff seeks an Order of this Court ordering Defendant to fully disclose the true nature of its misrepresentations. Plaintiff additionally request an Order: (1) requiring Defendant to disgorge its ill-gotten gains, (2) award full restitution of all monies wrongfully acquired by Defendant, and (3) interest and attorneys' fees. Plaintiff and the Class may be irreparably harmed and denied an effective and complete remedy if such an Order is not granted.

## SIXTH CAUSE OF ACTION
**Violation of the Consumers Legal Remedies Act**
**California Civil Code §§ 1750, *et seq*.**
**(On behalf of the California Class)**

127. Plaintiff incorporates each and every allegation contained in the paragraphs above as if restated herein.

128. This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §§1750, *et seq*. (the "CLRA").

129. Plaintiff and each member of the proposed Class are "consumers" within the meaning of Civil Code §1761(d).

130. The purchases of the Products by consumers constitute "transactions" within the meaning of Civil Code §1761(e) and the Products constitute "goods" within the meaning of Civil Code §1761(a).

131. Defendant violated, and continue to violate, the CLRA in at least the following respects:

a. §1770(5) pertaining to misrepresentations regarding the characteristics of goods sold—specifying that misleading representations regarding ingredients violate the CLRA;

b. §1770(7) pertaining to misrepresentations regarding the standard, quality, or grade of goods sold; and

c. § 1770(9) pertaining to goods advertised with the intent not to provide what is advertised.

132. Defendant knew, or should have known, that the labeling of its Products violated consumer protection laws, and that these statements would be relied upon by Plaintiff and the members of the Class.

133. The representations were made to Plaintiff and all members of the Class. Plaintiff relied on the accuracy of the representations on Defendant's labels which formed a material basis for their respective decisions to purchase the Products. Moreover, based on the very materiality of Defendant's misrepresentations uniformly made on or omitted from its Product labels, reliance may be presumed or inferred for all members of the Class.

134. Defendant carried out the scheme set forth in this Complaint willfully, wantonly, and with reckless disregard for the interests of Plaintiff and the Class, and as a result, Plaintiff and the Class have suffered an ascertainable loss of money or property.

135. Plaintiff and the members of the Class request that this Court enjoin Defendant from continuing to engage in the unlawful and deceptive methods, acts and practices alleged above, pursuant to California Civil Code §1780(a)(2). Unless Defendant is permanently enjoined from continuing to engage in such violations of the CLRA, future consumers of Defendant's Products will be damaged by its acts and practices in the same way as have Plaintiff and the members of the proposed Class.

136. On December 29, 2025, Plaintiff served Defendant Target a demand pursuant to Civil Code §1782, notifying it of the conduct described herein and that such conduct was in violation of particular provisions of Civil Code §1770. Defendant has not corrected the practices alleged herein, nor remunerated the putative class within 30 days of receipt of the demand letter. Plaintiff now seeks the full measure of damages pursuant to Civil Code § 1780(a).

## PRAYER FOR RELIEF

THEREFORE, Plaintiff, on behalf of herself and on behalf of the other members of the Class and for the Counts so applicable on behalf of the general public request an award and relief as follows:

A. An order certifying that this action is properly brought and may be maintained as a class action, that Plaintiff be appointed Class Representative, and Plaintiff's counsel be appointed Lead Counsel for the Class.

B. Restitution in such amount that Plaintiff and all members of the Class paid to purchase Defendant's Product or restitutionary disgorgement of the profits Defendant obtained from those transactions, for Causes of Action for which they are available.

C. Compensatory damages for Causes of Action for which they are available.

D. Statutory penalties for Causes of Action for which they are available.

E. Punitive Damages for Causes of Action for which they are available.

F. A declaration and Order enjoining Defendant from marketing and labeling its Products deceptively, in violation of laws and regulations as specified in this Complaint.

G. An Order awarding Plaintiff her costs of suit, including reasonable attorneys' fees and pre and post judgment interest.

H. An Order requiring an accounting for, and imposition of, a constructive trust upon all monies received by Defendant as a result of the unfair, misleading, fraudulent and unlawful conduct alleged herein.

I. Such other and further relief as may be deemed necessary or appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all causes of action or issues so triable.

DATED: January 30, 2026

Respectfully submitted,

Michael D. Braun
**KUZYK LAW, LLP**
2121 Avenue of the Stars, Ste. 800
Los Angeles, California 90067
Telephone: (213) 401-4100
Email: mdb@kuzykclassactions.com

*Counsel for Plaintiff*